```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


QUINN CONSTRUCTION, INC.        :    CIVIL ACTION
                                :
        v.                      :
                                :
SKANSKA USA BUILDING, INC.,     :
et al.                          :    NO. 07-406
```

MEMORANDUM AND ORDER

McLaughlin, J.                                     October 26, 2009

      This action concerns a dispute over the construction of Skirkanich Hall at the University of Pennsylvania ("Penn"). Skanska USA Building Inc. ("Skanska"), one of the defendants, was the general contractor on the Skirkanich Hall project. Plaintiff Quinn Construction Inc. ("Quinn") was a subcontractor. Quinn has filed a motion to compel the production of a report by one of Skanska's non-testifying experts on the ground that the report was provided to, and utilized by, one of Skanska's testifying experts. Skanska has resisted production claiming the report is protected "core" attorney work product. Because the Court finds that any privilege has been waived, the Court will grant the motion.[1]

---

[1] Quinn's initial motion sought to compel the production of two different sets of documents: the "Warner Report" and the "Koch Workpapers." Skanska has agreed to produce the Koch Workpapers and the motion in their regard is mooted. The Court therefore considers here only the motion for the production of the Warner Report.

I.   Background

Before this action was filed, Quinn proposed to Skanska that they consider cooperating in a common effort to present their claims concerning the project to Penn.  Skanska's counsel retained Warner Construction Consultants, Inc. ("Warner"), a consulting firm, to evaluate Quinn's proposal.  Skanska's counsel provided Warner with the parameters of the work to be performed and anticipated using Warner's analysis as part of its own work product in preparing a recommendation for Skanska.  Warner's resulting analysis was embodied in a "preliminary overview," which the Court will refer to as the "Warner Report." Declaration of Bruce D. Meller ("Meller Decl."), attached to Skanska's Brief, at ¶¶ 3-4.

After this action was filed, Skanska retained Capital Construction Consultants, Inc. ("Capital") and disclosed Zafar Farooqi of the Capital firm as Skanska's testifying expert.  At his deposition, Farooqi testified that he had been provided with a copy of the Warner Report by Skanska's counsel for him to review.  Bills from Farooqi to Skanska produced in discovery have two entries showing time billed for reviewing the Warner report. Deposition of Zafar B. Farooqi ("Farooqi Dep."), attached as Ex. A. to Quinn's Reply Brief, at 98-100; 2/5/09 Invoice from Capital to Skanska's counsel, attached as Ex. A to Quinn's Opening Brief.

Farooqi has submitted a declaration in support of Quinn's opposition in which he confirms that his firm was sent

the Warner Report by Skanka's counsel and that he reviewed it. In his declaration, Farooqi says that Capital "utilized the [Warner Report] to obtain an initial overview of some of the issues involved in this litigation" and that he understands that the Report was provided to Capital by Skanska's counsel for that purpose. Declaration of Zafar B. Farooqi ("Farooqi Decl."), attached to Skanska Opp. Br., at ¶¶ 2-3. At deposition, Farooqi stated that he believed that he included "an excerpt of the Warner document in our expert report." Farooqi Dep. at 98.[2]

Despite admitting to "utilizing" the Warner Report, Farooqi states in his declaration that Capital made its own independent analysis of Quinn's performance on the Skirkanich Hall project relying on project records and states that Capital "did not analyze, utilize, consult or rely upon the [Warner Report] in any way in connection with the preparation of our expert reports for this case." Farooqi Decl. at ¶ 4.

---

[2] Quinn points to an exhibit attached to Farooqi's report which contains a footer with the identifier "WARNER." Ex. B to Quinn's Reply Brief. Quinn argues the reference to Warner indicates that the exhibit was originally part of the Warner Report, and therefore shows that Farooqi relied on the Warner Report in reaching his opinions. The Court does not believe that the mere fact that the word "Warner" appears on the exhibit is enough, by itself, to find that it was originally part of the Warner Report. If it were necessary to resolve this issue to decide the motion, the Court would require submission of the Warner Report in camera or hold an evidentiary hearing. As discussed elsewhere in this opinion, however, the Court finds that Farooqi's own testimony in his deposition and his declaration provides sufficient evidence to establish that Farooqi considered the Warner Report in forming his opinions.

Quinn now moves to compel the production of the Warner Report as material relied upon by a testifying expert, to be produced under Fed. R. Civ. P. 26(a)(2)(B). Skanska resists production of the Report, arguing that it is both material prepared by a non-testifying expert, protected from disclosure under Fed. R. Civ. P. 26(b)(4)(B), and protected "core" attorney work product.[3]

## II. Analysis

Under Fed. R. Civ. P. 26(b)(4)(B), a party may not ordinarily discover "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." The opinions of

---

[3] In a letter to the Court dated October 23, 2009, Skanska states that it objects to unspecified "factual assertions" in Quinn's reply brief and asks that, if the Court is inclined to consider these assertions, the Court hold an evidentiary hearing. Most of the factual assertions in Quinn's reply brief concern whether it was Quinn's suggestion that Quinn and Skanska press claims against Penn, or whether Skanska had already publicly blamed Penn for delays before Quinn's suggestion. The Court finds this issue irrelevant to deciding the motion to compel and has not considered any of Quinn's factual assertions concerning it. The only factual material in Quinn's reply brief that the Court has considered in reaching its conclusions is the excerpt from Farooqi's deposition discussing his use of the Warner Report. This deposition testimony was referenced in Quinn's initial motion and Skanska responded to its substance by providing Farooqi's declaration in its opposition brief. Skanska has not identified any specific additional information it wishes to present on the issue, and the Court sees no need for an evidentiary hearing.

such a non-testifying expert may be disclosed, however, upon a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Id.

Under Fed. R. Civ. P. 26(b)(3), which codifies the protection for attorney work product, a party may not ordinarily discover documents that "are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Those materials may be required to be produced, however, if they are otherwise discoverable and if the requesting party shows "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Id.; see also Hickman v. Taylor, 329 U.S. 495, 510-11 (1947). In ordering production, a court must "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," often referred to as "core" attorney work product. Fed. R. Civ. P. 26(b)(3)(B); In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003).

The Court finds that, because Warner was retained to provide pre-litigation advice and has not been disclosed as a testifying expert in this case, the Warner Report is the opinion

5

of a non-testifying expert, protected from disclosure under Fed. R. Civ. P. 26(b)(4)(B).  The Court also finds that, because the Warner Report was prepared at the direction of an attorney in anticipation of litigation, the Report is attorney work product protected by Fed. R. Civ. P. 26(b)(3).  In addition, because the Report was intended to be used to guide litigation strategy, its scope and the specific issues discussed may indirectly reveal the "mental impressions, conclusions, opinions, or legal theories" of Skanska's counsel at whose direction it was prepared.  The Court therefore finds that the Warner Report constitutes, at least in part, "core" attorney work product.  See, e.g., Sporck v. Peil, 759 F.2d 312, 316-17 (3d Cir. 1985) (holding an attorney's compilation of non-privileged documents was protected attorney work product because the selection process would reveal counsel's mental impressions and strategy).

   Having found that both the protections for a non-testifying expert and for attorney work product apply to the Warner Report, the Court finds that Quinn has not made the required showing to overcome those protections.  Quinn has not made (nor has it attempted to make) the showing of "exceptional circumstances" needed to obtain the opinions of non-testifying experts or the "substantial need" and "undue hardship" needed to obtain attorney work product.

   Had the Warner Report not been provided to Farooqi, this would be the end of the inquiry.  The Warner Report would be

protected from discovery under both Rules 26(b)(4)(B) and 26(b)(3). The protections of both rules, however, can be waived. See <u>Westinghouse Elec. Corp. v. Republic of Philippines</u>, 951 F.2d 1414, 1428 (3d Cir. 1991) (waiver of attorney work product); <u>Plymovent Corp. v. Air Technology Solutions, Inc.</u>, 243 F.R.D. 139 (D.N.J. 2007) (waiver of non-testifying expert protection). The issue before the Court therefore becomes whether, by disclosing the Warner Report to Farooqi, its testifying expert, Skanska waived the Report's otherwise protected status.

To decide this issue, the Court will first briefly sketch the development of the requirement that testifying experts like Farooqi disclose the information that they considered in reaching their opinions. Before 1993, the Federal Rules of Civil Procedure required only limited disclosure concerning testifying experts. Rule 26 only permitted a party to serve interrogatories on an opponent, requesting the identity of any person expected to be called as an expert witness at trial, the subject matter of their testimony, and the " substance of the facts and opinions" of that testimony and a "summary of the grounds for each opinion." Fed. R. Civ. P. 26(b)(4)(A)(i) (1992) (amended 1993). Discovering any additional information about an expert required leave of court. Fed. R. Civ. P. 26(b)(4)(A)(ii)(amended 1993).

In 1993, Rule 26 was significantly amended to require parties to produce information without formal discovery requests from their opponents. With respect to testifying experts, the

amended Rule required that any witness who "may" testify as an expert at trial "must" produce a written report that contains, among other things, "the data or other information considered by the witness in forming" the witness' opinions.  Fed. R. Civ. P. 26(a)(2)(B)(ii).  This language has been interpreted consistently to require disclosure of any information a testifying expert reviewed, even if that information is ultimately rejected and not used as a basis for the expert's ultimate opinion.  See, e.g., Synthes Spine Co., L.P. v. Walden, 232 F.R.D. 460 (E.D. Pa. 2005);  8 Charles Alan Wright, et al. Fed. Practice & Procedure § 2031.1.  The Advisory Committee Notes to the 1993 amendments make clear that this language was intended to require the disclosure of information that would otherwise be privileged:

> The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions.  Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions -- whether or not ultimately relied upon by the expert -- are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26 ("Advisory Committee Notes").

       Relying on these advisory committee notes, several federal courts of appeals have held that the requirement of Rule 26(a)(2)(B)(ii) that "information considered" by a testifying expert be disclosed requires the production of otherwise

8

privileged material.  Regional Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 715 (6th Cir. 2006) (agreeing with "the majority view that Rule 26 now requires disclosure of all information provided to testifying experts"); In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375-76 (Fed. Cir. 2001) (holding that "because any disclosure to a testifying expert in connection with his testimony assumes that privileged or protected material will be made public . . . there is a waiver to the same extent as with any other disclosure"); see also Elm Grove Coal Co. v. Dir., Office of Workers' Comp. Programs, 480 F.3d 278 (4th Cir. 2007) (finding that, under analogous Rules of ALJ Procedure, draft expert reports of testifying experts and related communications with counsel were not protected from disclosure as attorney work product, following the reasoning of In re Pioneer Hi-Bred).

The United States Court of Appeals for the Third Circuit has not yet squarely addressed the issue.  Two decisions, however, address related issues:  Bogosian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir. 1984) and In re Cendant Corp. Sec. Litig., 343 F.3d 658 (3d Cir. 2003).

In Bogosian, which was decided before the 1993 amendments to Rule 26, a party sought to compel the production of memoranda prepared by opposing counsel that had been given to, and reviewed by, the opposing party's experts in preparation for their trial depositions.  As permitted by the then-existing

version of the rule, the party had requested these documents through interrogatories. The district court found that these documents were protected work product under Rule 26(b)(3). The district court also found that providing these documents to a testifying expert did not waive the work product privilege, but it did make the documents discoverable as "the grounds" for a trial expert's opinion under the then-existing version of Rule 26(b)(4). Id., 738 F.2d at 589-90, 593. The district court reasoned that the resulting "tension" between protecting attorney work product and permitting discovery into the basis for a testifying expert's opinion meant that "one of the Federal Rules' conflicting policies . . . would have to give way to the other." Id., 738 F.2d at 590. The district court concluded that "in this case that it is the attorney work product-qualified immunity which must give way" and required production of the documents. Id.

On appeal, the United States Court of Appeals for the Third Circuit rejected the district court's reasoning. The Bogosian court found that, because the documents at issue contained the mental impressions of counsel, they were "core" work product entitled to the highest degree of protection. It also agreed with the district court that work product protection was not waived by providing it to a testifying expert, citing as persuasive authority U.S. v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980). Bogosian, 738 F.2d at 593. U.S. v. Am.

Tel. & Tel. held that, because the purpose of the work product doctrine, unlike attorney-client privilege, was to protect information from disclosure to opposing parties, not to protect it from disclosure to anyone outside a confidential relationship, a disclosure of protected work product to third parties would not automatically result in waiver if the disclosure was made in the pursuit of trial preparation and was not inconsistent with maintaining secrecy against opponents.  Id. 642 F.2d at 1299.

Having found no waiver, the Bogosian court then considered whether the protections for attorney work product had to "give way" to the right to discover the basis for an expert's opinion.  The court first considered the text of the applicable rules.  Under the language of Rule 26 (both before and after the 1993 amendments), the provision setting out the protection for attorney work product, 26(b)(3), references the provision governing discovery of expert material, 26(b)(4).  The district court had relied on this reference to support its conclusion that the protections for attorney work product were subordinate to the rules governing expert discovery.  The appellate court rejected this reading, holding that the reference to Rule 26(b)(4) signified only that "trial preparation material prepared by an expert is also subject to discovery, but only under the special requirements pertaining to expert discovery."  Bogosian, 738 F.2d at 594.  The court also noted that the reference to Rule 26(b)(4) did not appear in the subsection of Rule 26(b)(3) requiring

11

heightened protection for "core" work product.  Relying on the advisory committee notes to the pre-1993 version of Rule 26, the Bogosian court found that the then-existing provisions of Rule 26(b)(4) had been instituted to make clear that expert information was discoverable, but were not intended to override the work product protections of Rule 26(b)(3).  The court therefore remanded the case for the district court to consider whether the documents at issue were protected under Rule 26(b)(3).  Id., 738 F.2d at 594-95.

Although Rule 26 was substantially revised in 1993, the United States Court of Appeals for the Third Circuit cited Bogosian with approval in In re Cendant Corp. Sec. Litig., 343 F.3d 658 (3d Cir. 2003).  In Cendant, a party sought to ask deposition questions of its opponent's employee concerning a meeting among the employee, the opponent's counsel, and the opponent's consulting expert.  The consulting expert was a specialist in deposition preparation and was not expected to be called at trial.  The district court had held that the conversations were not protected by the attorney-client or attorney work product privileges because the consultant was not a lawyer and was not offering legal advice.  Id., 343 F.3d at 660-61.

On appeal, the Cendant appellate court reversed, finding that the consultant's conversations were protected attorney work product.  The court found that work product

protection extended to both materials prepared by an attorney's agents, as well as to "intangible" material that would reveal an attorney's mental impressions or trial strategy, and therefore covered the conversation at issue.  In reaching this conclusion, the Cendant court considered and rejected the movant's argument that "Rule 26(b)(3)'s work product protection is superseded by Rule 26(b)(4)(B)," which permits discovery of facts and opinions held by a consulting expert upon a showing of exceptional need. Id., 343 F.3d at 664.  The Cendant court cited and quoted with approval Bogosian's holding that the work product protections of Rule 26(b)(3) do not "give way" to the provisions of Rule 26(b)(4) permitting expert discovery.  Id. (citing Bogosian, 738 F.2d at 594).

Neither Bogosian nor Cendant answers the question here: whether giving material protected as attorney work product under Rule 26(b)(3) to a testifying expert, who is required to disclose that material to the opposing party under Rule 26(a)(2)(B), waives the work product protection.  Neither case involves a party giving protected material to someone required to disclose it.  In Bogosian, under the version of Rule 26 then in effect, a testifying expert was not under any obligation to disclose the information he or she considered in reaching an opinion; the then-existing version of the rule only made "the grounds" for the expert's opinion discoverable through interrogatories.  Protected material given to a testifying expert under the pre-1993 version

13

of Rule 26 would therefore not be automatically subject to disclosure.  Similarly, in Cendant, the information at issue was never given to a testifying expert, who post-1993 would have had a duty to disclose it, but was in the possession of a non-testifying expert from whom it could be requested in discovery pursuant to Rule 26(b)(4)(b), but who had no duty of disclosure.

Having found neither Bogosian nor Cendant controlling, the Court looks to the language and purpose of the applicable rules and the law concerning waiver.  The disclosure requirements imposed upon testifying experts under the 1993 amendments to Rule 26(a) require that any "information considered" by a testifying expert be disclosed to the opposing party.  Fed. R. Civ. P. 26(a)(2)(B)(ii).  The advisory committee notes to the 1993 amendments are clear that one purpose of these disclosure requirements was to ensure that litigants would "no longer be able to argue that materials furnished to their experts to be used in forming their opinions . . . are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."  Advisory Committee Notes.  Although "core" attorney work product that reveals counsel's mental impressions and theories is entitled to a high degree of protection, such protection can be waived if it is disclosed in a way that "enable[s] an adversary to gain access to the information." Westinghouse, 951 F.2d at 1428; see also U.S. v. Am. Tel. & Tel. Co., 642 F.2d at 1299 (disclosure of work product to third

14

parties will result in waiver if the disclosure is inconsistent with maintaining secrecy against opponents).

The Court therefore holds that, when a party provides attorney work product to a testifying expert and that information is "considered" by the expert and becomes subject to the disclosure requirements of Rule 26(a)(2)(B), then the protection from disclosure ordinarily given to attorney work product is waived and the information must be disclosed.

The Court's holding is consistent with that of the majority of district courts in this circuit to have considered the issue in light of Bogosian and Cendant.  See F.T.C. v. Lane-Labs, USA, Inc., 2008 WL 4003927 (D.N.J. August 25, 2008) Doe v. Luzerne County, 2008 WL 2518131 (M.D. Pa. June 19, 2008); Dyson Tech. Ltd. v. Maytag Corp., 241 F.R.D. 247 (D. Del. 2007); Synthes Spine Co., L.P. v. Walden, 232 F.R.D. 460, 462-64 (E.D. Pa. 2005);  Vitalo v. Cabot Corp., 212 F.R.D. 472 (E.D. Pa. 2002).  All of these decisions hold that protected attorney work product that given to and relied upon by a testifying expert must be disclosed under Rule 26(a)(2)(B).[4]

---

[4] A minority of decisions in this circuit have reached a contrary result.  See St. Marys Area Water Auth. v. St. Paul Fire & Marine Ins. Co., 2006 WL 1670281 at *1-2 (M.D. Pa. June 15, 2006); Krisa v. Equitable Life Assur. Soc., 196 F.R.D. 254, 258-60 (M.D. Pa. 2000); In re Teleglobe Comm. Corp., 392 B.R. 561, 574-75 (Bkrtcy. D. Del. 2008).  St Mary's and Teleglobe, the two cases decided after Cendant, interpret Bogosian as broadly holding that core attorney work-product is not discoverable, even if it has been disclosed to a testifying expert, and interpret Cendant's approving citation of Bogosian to mean that this

Having found that the protection for attorney work product can be waived if work product is given to a testifying expert, the Court must now consider whether Skanska waived that protection for the Warner Report by giving the Report to Farooqi. The attorney work product protection for the Warner Report will be waived if the Report is subject to Skanska's duty to disclose "the data or other information considered by" Farooqi in forming his opinions, imposed by Fed. R. Civ. P. 26(a)(2)(B)(ii).

Here, Farooqi testified at deposition that he received the Warner Report from Skanska's counsel and reviewed it. In his declaration, he elaborates that his firm "utilized" the Report "to obtain an initial overview of some of the issues involved in this litigation" but did not "analyze, utilize, consult or rely upon" the Report "in connection with the preparation of our expert reports for this case." Farooqi Decl. at ¶¶ 3-4.

Courts have interpreted the scope of information "considered by" an expert broadly. See Synthes Spine, 232 F.R.D. at 464 (a "plaintiff must disclose all materials, regardless of privilege, that plaintiff's expert generated, reviewed, reflected upon, read, and/or used in formulating his conclusions, even if these materials were ultimately rejected by plaintiff's expert in reaching his opinions."). Given this broad definition, Farooqi's

---

holding was unaffected by the 1993 amendments to Rule 23. As discussed above, this Court disagrees with this interpretation of Bogosian and Cendant.

16

admission that he reviewed the Warner Report to obtain an "overview" of the issues involved in the litigation, prior to his firm's conducting an independent analysis of its own, is sufficient to establish that Farooqi "considered" the Warner Report in forming his opinions.

As material considered by a testifying expert, the Warner Report is subject to the disclosure requirements of Rule 26(a)(2)(B)(ii), and as such, its protection as attorney work product has been waived. The Court will therefore grant Quinn's motion to compel and order Skanska to product the Warner Report.[5]

Quinn suggests that, depending on the information in the Warner Report, it may wish to take a supplemental deposition of Skanska's expert Farooqi. If after reviewing the Warner Report, Quinn wishes to depose Farooqi again, Quinn's counsel shall confer with Skanska's counsel and, if no agreement can be

---

[5] In its opposition to Quinn's motion to compel, Skanska requests that, should the Court order it to produce the Warner Report, that Quinn be ordered to compensate Skanska for the cost of the Warner Report under Rule 26(b)(4)(C)(ii). Under Rule 26(b)(4)(C)(ii), unless it would cause manifest injustice, a court "must require" that a party seeking facts or opinions from a non-testifying expert under Rule 26(b)(4)(B) pay a "fair portion" of the fees and expenses reasonably incurred in obtaining those facts and opinions. Here, however, Quinn is not seeking production of the Warner Report under Rule 26(b)(4)(B), which would require a showing of "exceptional circumstances" that Quinn has not attempted to meet. Instead, Quinn has successfully sought the Warner Report as "data or other information considered" by a testifying expert, which Skanska is required to disclose under Rule 26(a)(2)(B)(ii). The Federal Rules do not require a party to pay for an opposing party's required expert disclosures, and Skanska's request for reimbursement will be denied.

reached, Quinn shall file a written request with the Court. This request should set out the questions Quinn wishes to ask Farooqi about the Warner Report.

An appropriate Order will be entered separately.