IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


QUINN CONSTRUCTION, INC.        :        CIVIL ACTION
                                :
        v.                      :
                                :
SKANSKA USA BUILDING, INC.,     :
et al.                          :        NO. 07-406


MEMORANDUM

McLaughlin, J.                                   November 30, 2010


        This is a dispute over the application of a jury waiver
clause located in two subcontracts between plaintiff Quinn
Construction, Inc. ("Quinn") and defendant Skanska USA Building,
Inc. ("Skanska").  The original action arose out of the
construction of the Skirkanich Hall building at the University of
Pennsylvania.  Quinn was a concrete subcontractor on the
Skirkanich Hall project.  Skanska was the general contractor, and
Tod Williams Billie Tsien Architects, LLP ("TWBTA") was the firm
that provided architectural services for the project.

        In connection with its work on Skirkanich Hall, Quinn
entered into two related subcontracts with Skanska to perform
concrete work on the building.  Before executing the
subcontracts, Quinn and Skanska negotiated over the terms of the
agreements, and Quinn requested that a jury waiver clause,
located in Article 24.1 of each subcontract, be omitted.  Def.
Skanska's Mot. to Strike Jury Demand (hereinafter "Skanska's
Mot."), Ex. A at 3.  However, Skanska refused any changes to

Article 24.1.  Skanska's Mot., Ex. B at 2.  Quinn and Skanska

then executed the subcontracts with the jury waiver clauses in

place.  The clause, which appears in Article 24.1 of each

subcontract, provides:

> Except as provided in paragraph 24.2 below, any
> and all disputes arising out of and/or related to
> this Agreement and the performance of the Work at
> the Project, shall be decided solely in the State
> Court System, in the State of New Jersey and venue
> in any such action must be placed in the County of
> Morris and to which jurisdiction the Subcontractor
> consents.  The Subcontractor expressly waives all
> rights to trial by jury.

Skanska's Mot., Ex. C, Art. 24.1; Ex. D, Art. 24.1.

On January 31, 2007, Quinn filed a complaint against

Skanska and TWBTA in view of delays and disruptions to its work.

Specifically, Quinn asserted breach of contract against Skanska

for the unpaid contract balance, unpaid change orders, and other

damages for delay.  Quinn asserted negligent misrepresentation

against the architect TWBTA for allegedly incomplete plans and

specifications, which contributed to project delays.  Quinn did

not demand a jury in its complaint.

On March 19, 2007, TWBTA answered the complaint and

asserted cross-claims for contribution and indemnity against

Skanska.  TWBTA also did not include a jury demand in its answer

or cross-claims.

On March 28, 2007, Skanska answered the complaint and

counterclaimed against Quinn for breach of contract and

indemnity.  Skanska asserted cross-claims against TWBTA for indemnity and negligent misrepresentation.  Skanska demanded a jury trial "on all issues so triable."  Def. Skanska's Answer at 35.

On March 14, 2008, Skanska filed an amended answer in which it again asserted counterclaims against Quinn for breach of contract and indemnity, and cross-claims against TWBTA for indemnity, contribution and negligent misrepresentation.  Skanska's negligent misrepresentation cross-claim against TWBTA asserted the same allegations as Quinn's: that TWBTA provided incomplete and inaccurate drawings, which led to damages and delays.  Skanska demanded a jury trial "on all issues so triable."  Def. Skanska's Am. Answer at 49.

On November 2, 2009, Skanska and TWBTA filed a stipulation to withdraw Skanska's jury demand.  Def. Skanska's Stipulation to Withdraw Jury Demand.  Quinn did not consent to the withdrawal.  Instead, Quinn filed its own jury demand the same day as the defendants' stipulation, demanding a jury trial "on all of the claims and causes of action asserted by it and against it."  Pl.'s Demand for Jury Trial.

Defendants Skanska and TWBTA now move to strike Quinn's jury demand and to designate the action for trial by the Court. For the reasons that follow, the Court will grant Skanska's motion to strike Quinn's jury demand.  However, the Court will

deny TWBTA's motion, as the Court finds that Quinn has a right to a jury trial in asserting its claims against TWBTA.

I. <u>Analysis</u>

    A.   <u>Overview of Applicable Law</u>

        The Seventh Amendment to the United States Constitution guarantees the right to a jury trial in "[s]uits at common law." U.S. Const. amend. VII. Federal Rule of Civil Procedure 38 preserves the right to a jury trial where it is declared by the Seventh Amendment or provided by federal statute. Fed. R. Civ. P. 38(a). On any issue "triable of right by a jury," a party may demand a jury trial either in a pleading, or by filing and serving the other parties with a written demand "no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b). If a party does not specify the issues it wishes to have tried by a jury, it is considered to have demanded a jury trial "on all the issues so triable." Fed. R. Civ. P. 38(c).

        A party waives its right to a jury trial unless its demand is properly served and filed. Fed. R. Civ. P. 38(d). However, not every party must file an individual demand for a jury trial. A party may rely on the jury demand of another to the "extent of the issues embraced by that demand." <u>Collins v. Gov't of Virgin Islands</u>, 366 F.2d 279, 284 (3d Cir. 1966). Thus,

if one party serves a proper jury demand, another party,
including an adverse party, is entitled to rely on that demand
where filing a similar demand would be "superfluous." Id. at
285. However, reliance by one party on the jury demand of
another "must be kept within proper limits" and is not
appropriate where a jury trial is sought on distinct issues. See
id. at 286. Rule 38(d) recognizes the possibility of reliance,
and provides that "a proper demand may be withdrawn only if the
parties consent." Fed. R. Civ. P. 38(d).

        Finally, once a jury trial has been demanded pursuant
to Rule 38, the trial must be by jury on all issues subject to
the demand, unless: (1) the parties stipulate to a non-jury
trial; or (2) "the court, on motion or on its own, finds that on
some or all of those issues there is no federal right to a jury
trial." Fed. R. Civ. P. 39(a).


        B.    Skanska's Motion to Strike Quinn's Jury Demand

        Skanska argues that Quinn knowingly and intelligently
waived its right to a jury trial in the subcontracts.[1] By
demanding a jury trial, Skanska argues that it neither waived its

---

        [1]Neither party contests the validity of the jury waiver
clauses, and therefore the Court will not address whether Quinn's
waiver was in fact knowing and intelligent. See Hydramar, Inc.
v. General Dynamics Corp., 1989 U.S. Dist. LEXIS 15784, at *5
(E.D. Pa. Dec. 29, 1989) (jury waiver must be knowing and
intelligent).

own contractual rights to a bench trial, nor did its demand undo
Quinn's jury waiver. Therefore, as Quinn never had a right to a
jury trial, Skanska claims it needed only TWBTA's consent to
withdraw its demand pursuant to Rule 38(d).

Quinn concedes that it initially had no right to a jury
trial. Pl.'s Opp'n to Def. Skanska's Mot. at 3. However, Quinn
argues that once Skanska demanded a jury on "all issues so
triable," Quinn was entitled to rely on the demand pursuant to
Collins v. Gov't of Virgin Islands, and the demand could not be
withdrawn without Quinn's consent.

The Court concludes that Quinn waived its right to a
jury trial against Skanska, and Skanska's subsequent demand did
not abrogate Quinn's waiver. Quinn correctly relies on Collins
for the proposition that a party may legitimately rely on another
party's jury demand. However, Quinn reads Collins for the
broader proposition that once a jury demand is filed, all parties
have a right to rely on that demand and a jury trial must be had
unless all parties consent to its withdrawal.

The Court does not agree with Quinn's broad reading of
Collins. Instead, Collins presupposes that the relying party has
a right to a jury trial in the first place. Notably, none of the
parties in Collins had explicitly waived their rights to a jury
trial, as did Quinn in the present case. The Court in Collins
recognized that the government, the party which sought to rely on

6

its co-defendant's jury demand, "had the right to ask for trial by jury" and could have filed its own demand.[2] Collins, 366 F.2d at 283. Moreover, in view of the overlapping issues between the defendants, the Court determined that requiring the government to file a separate demand would have been "superfluous." Id. at 285. The Court's conclusion that the jury demand could not be withdrawn without the government's consent was therefore based on both the government's independent right to a jury, and the overlapping issues between the defendants. See id. at 283-85.

Having explicitly waived its right to a jury trial, Quinn was in a different position from the government in Collins, which could have filed its own demand. Quinn could not have filed a demand, and was not entitled to a jury by virtue of reliance on Skanska's demand.

This analysis is not affected by any of the cases that Quinn cites in support of its argument. Quinn relies on Bro-Tech Corp. v. Thermax, Inc., 2009 U.S. Dist. LEXIS 23452 (E.D. Pa. Mar. 19, 2009) for an instance where a defendant was required to obtain the plaintiff's consent before withdrawing its own jury demand. However, there was no question of waiver in Bro-Tech.

---

[2]The question before the Court was not whether a party may always rely on another party's jury demand. Instead, the question was whether a party, who could have filed its own jury demand but did not do so, had waived its right to a jury or whether it was entitled to rely on a co-defendant's demand. Id. at 283.

Instead, the question before the Court was similar to that in Collins: whether a plaintiff, who did not exercise its right to a jury by filing a demand, could rely on the defendant's demand. See id. at *5. Resolution of this question required the Court to determine whether the parties' issues were sufficiently related so as to justify reliance. Id. at *9. Bro-Tech does not support the idea that a demand creates a right to rely where one does not otherwise exist. The other cases Quinn cites on the issue similarly do not involve waiver, and are therefore inapposite.[3]

Moreover, the Court's reading of Collins is consistent with the Federal Rules of Civil Procedure. Quinn relies on Rule 38(d) for the proposition that "a proper demand may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). However, Rule 39 clarifies that Rule 38 is not a source of independent rights, and reflects the possibility that a party may have no pre-existing right to a jury trial. Specifically, Rule 39 instructs that following a proper demand, trial on all issues so demanded must be by jury unless the parties consent otherwise, or the court, "on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R.

---

[3] See, e.g., Yates v. Dann, 223 F.2d 64 (3d Cir. 1955) (addressing right of reliance in admiralty context, where no question of waiver at issue); Bowers v. City of Philadelphia, 2008 2008 WL 5234357, at *6 (E.D. Pa. Dec. 12, 2008) (permitting defendants to rely on plaintiff's jury demand where defendants "expressly ha[d] not waived their right to a jury trial.").

8

Civ. P. 39(a). Given that Quinn had waived its right to a jury trial, it had no pre-existing right to make a demand, and Skanska's demand did not create one.

The Court's conclusion is further supported by decisions from other circuits. In <u>Kramer v. Banc of America Securities, LLC</u>, 355 F.3d 961 (7th Cir. 2004), the Court of Appeals for the Seventh Circuit rejected the plaintiff's argument that once the defendant demanded a jury trial, it could not withdraw that demand without the plaintiff's consent. The Court interpreted the text of Rules 38 and 39 and concluded:

> [Plaintiff]'s reliance on Rule 38(d) for the proposition that [defendant] could not withdraw a demand for a jury trial without her consent, is misplaced. Rule 38, as is made clear by its caption, is concerned with jury trials of right ... But [plaintiff] had no right to a jury trial and there is no restraint in the text of Rule 39 on the ability of a party to withdraw its consent to a jury trial that is not of right.

<u>Id.</u> at 968. <u>See also</u> <u>Rachal v. Ingram Corp.</u>, 795 F.2d 1210, 1217 (5th Cir. 1986) (concluding that plaintiff could withdraw jury demand without defendant's consent because "Rule 39(a) does not create the right to a jury, but rather preserves a right established by some other source"); <u>Rockwood v. SKF USA, Inc.</u>, 2009 U.S. Dist. LEXIS 113852 (D.N.H. Dec. 3, 2009) (plaintiffs who waived right to jury trial could not rely on defendant's jury

demand, and demand could be withdrawn without plaintiffs'
consent).[4]

The Court concludes that Quinn has no right to a jury
against Skanska.  Quinn explicitly waived its jury right via
contract, and therefore could not have filed a demand.  Further,
as Quinn had no independent right to a jury, Skanska's demand did
not abrogate Quinn's waiver and permit it to rely.  It follows
that because Quinn could neither file a demand nor rely on
Skanska's demand, Quinn's own jury demand on November 2, 2009,
was without effect.  Accordingly, the Court will grant Skanska's
motion to strike as to Quinn's claims against Skanska.


C.    TWBTA's Motion to Strike Quinn's Jury Demand

TWBTA has also moved to strike Quinn's jury demand as
to Quinn's claims against it.  Unlike Skanska, TWBTA is not a
party to the subcontracts whose waiver clause it seeks to
enforce.  Therefore, the Court must address whether TWBTA, as a

---

[4]The Court does not find persuasive Quinn's attempts to
distinguish these cases.  Quinn argues that Kramer and Rachal
arose under a distinct analytical framework, as the parties' jury
rights were limited by operation of the Seventh Amendment or
federal law, whereas Quinn's jury right is limited by contract.
The Court finds no basis for such a distinction.  Neither the
Federal Rules nor the cases interpreting them suggest that these
different contexts are of any relevance.  See, e.g., Joseph Oat
Holdings v. RCM Digesters, Inc., 2007 U.S. Dist. LEXIS 25175
(D.N.J. Aug. 24, 2007) (applying same analysis to claims for
which there was no jury right by operation of law and claims for
which there was no jury right by operation of contract).

non-signatory to the subcontracts, is entitled to rely on the jury waiver clauses therein. Because the Court concludes that TWBTA cannot invoke the jury waiver, the Court will address whether Quinn is entitled to rely on Skanska's jury demand in asserting its claims against TWBTA. For the reasons that follow, the Court concludes that Quinn is entitled to rely on Skanska's demand. Therefore, the Court will deny TWBTA's motion.

### 1. TWBTA's Reliance on the Jury Waiver Clauses

TWBTA argues that its status as a non-signatory to the subcontracts is inapposite. Instead, the relevant inquiry focuses on the subject matter of the jury waiver clauses.[5] As Quinn's claims "arise[] out of and/or relate[] to" the subcontract agreements, TWBTA argues that they necessarily fall within its subject matter and TWBTA should be entitled to invoke the waiver. Similarly, TWBTA argues that equitable estoppel should prevent Quinn from simultaneously suing TWBTA for claims arising from the subcontracts, and avoiding the jury waiver clauses therein.

---

[5]Although TWBTA directs the Court to the "subject matter" of the waiver clause, this argument encompasses two distinct theories. Some courts conducting a "subject matter" analysis focus on the text and breadth of a waiver clause. Other courts apply an equitable estoppel analysis by examining the asserted claims and their relation to the contract containing the waiver.

11

For its part, Quinn argues that TWBTA, as a stranger to the subcontracts between Quinn and Skanska, cannot invoke the jury waiver clauses.  Further, as TWBTA is in neither a contractual nor an agency relationship with Skanska, this case does not fall within any of the recognized exceptions that permit a non-signatory to rely on the provisions of a contract.

The Court of Appeals for the Third Circuit has explicitly recognized the propriety of non-signatory enforcement of jury waivers in the context of an agency relationship.  Thus, where a corporation enters into a contract that contains a jury waiver clause, the corporation's non-signatory directors or officers may invoke the waiver as agents of the corporation. Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 225 (3d Cir. 2007) (hereinafter "Tracinda II").  The guiding rationale underlying this rule is that permitting non-signatory agents to enforce jury waiver clauses prevents parties to a contract from "circumvent[ing] the agreements by naming individuals as defendants instead of the entity."  Id.

The Court concludes that Tracinda II and the agency rule it espouses are inapplicable to this case.  Unlike in Tracinda II, the present case does not arise in the context of an agency relationship.  None of the parties argue that TWBTA acted as Skanska's agent, and therefore the requisite predicate for applying the agency rule is lacking.  Moreover, the policies

articulated in Tracinda II do not favor TWBTA's enforcement of the waiver. As noted, Tracinda II was concerned about the potential dangers of allowing a party to avoid a jury waiver clause with a corporation by suing its agents. Tracinda II, 502 F.3d at 225. The same concern is not present in this case. The Court has already concluded that Quinn waived its right to a jury with Skanska, and the waiver remains in effect. Further, as TWBTA is not in an agency relationship with Skanska, there is no danger that Quinn will circumvent its jury waiver with Skanska by suing TWBTA.

Notwithstanding the absence of agency, TWBTA argues that the subject matter of the jury waiver clause should govern the inquiry. As noted, an inquiry into subject matter encompasses two different approaches. First, courts have focused on the actual text and breadth of jury waiver clauses in determining whether non-signatories to a contract may enforce them. In this vein, TWBTA relies on the District Court decision in Tracinda. In In re: DaimlerChrysler AG Securities Litigation, 2003 U.S. Dist. LEXIS 21130 (D. Del. Nov. 19, 2003) (hereinafter "Tracinda I"), the Court held that the text of a jury waiver clause was broad enough to encompass the plaintiff's claims against non-signatory defendants, concluding:

> [T]he plain language of the Stockholder Agreement
> supports [plaintiff]'s waiver of its right to a
> jury trial. The waiver is broadly worded and
> applies to any claim or any action "arising out of

13

> or in connection with this Agreement or the
> transactions contemplated hereby" without
> limitation as to whom that action is brought
> against.

Id. at *6-7.

TWBTA also refers to Okura & Co. v. Careau Group, 783
F. Supp. 482 (C.D. Cal. 1991), where the Court permitted a non-
signatory defendant to enforce a jury waiver in view of the broad
text of the waiver clause. Specifically, the plaintiff in Okura
sued two corporate entities and several individuals for fraud
related to a financing agreement. Although the plaintiff had
only entered into an agreement containing a jury waiver with one
of the corporate entities, the Court permitted the non-
contracting entity to enforce the jury waiver against the
plaintiff. The Court reasoned that the waiver clause was broadly
worded,[6] and the plaintiff's claims "relate[d] to the financing
agreement itself." Id. at 489-90. Therefore, the non-signatory
entity was entitled to invoke the waiver. Id.

The Court acknowledges that the jury waiver clauses in
the Quinn-Skanska subcontracts are similar in breadth to those in
Tracinda and Okura. However, the cases that TWBTA cites in
support of this "linguistic" subject matter approach involved

---

[6]The Okura waiver clause was almost identical to the clause
in Tracinda. The parties in Okura waived their right as to "any
action, proceeding or counterclaim arising out of or relating to
this Agreement or any of the Operative Agreements or the actions
of the Lender in the enforcement thereof." Id. at 489.

additional factors that are not present here.  In <u>Tracinda I</u>, the
District Court concluded that agency and estoppel theories also
permitted the non-signatory defendants to enforce the waiver
clause.[7]  Similarly, in <u>Okura</u>, the Court concluded that an agency
relationship permitted the non-signatory defendants to enforce
the waiver clause as agents of the signatory corporation.[8]
Therefore, these cases did not turn purely on the breadth of the
waiver clauses.

Moreover, the Court is not convinced that a broad jury
waiver clause, standing alone, is enough to permit a non-
signatory to enforce a waiver.[9]  Because "the right of a jury
trial is fundamental, courts indulge every reasonable presumption
against waiver."  <u>Collins</u>, 366 F.2d at 279 (quoting <u>Aetna</u>
<u>Insurance Co. v. Kennedy</u>, 301 U.S. 389, 393 (1937)).  A pure
linguistic approach would significantly expand the impact of jury

---

[7]<u>Tracinda I</u>, 2003 U.S. Dist. at *6 (concluding that non-
signatory defendants were permitted to enforce waiver as agents
of corporation, and holding that allegations of joint misconduct
meant Tracinda was equitably estopped from arguing waiver applied
only to signatories).

[8]<u>Okura</u>, 783 F. Supp. at 490 (concluding that non-signatory
defendants could invoke waiver, as claims against them "derive[d]
from their role as directors" of the signatory entity).

[9]The Court of Appeals for the Third Circuit has declined to
express a view on this approach.  In affirming the decision in
<u>Tracinda I</u>, the Court of Appeals limited its holding to an agency
theory, and therefore did not address whether, "as a linguistic
matter, the plain language of the jury waiver is broad enough to
cover all claims ... without limitation as to whom that action is
brought against."  <u>Tracinda II</u>, 502 F.3d at 225 & n.14.

waiver clauses.  As the case law indicates, jury waivers are broadly worded and would support non-signatory enforcement more often than not.  Whereas the agency exception creates a limited and predictable right of non-signatory enforcement, a pure linguistic approach would extend the impact of waiver clauses without a clear and identifiable stopping point.  The Court concludes that such an expansion would be in conflict with the presumption against waiver of this right.

Finally, the second approach under the "subject matter" inquiry is equitable estoppel.  Estoppel is frequently applied in the context of arbitration agreements, where non-signatories to an agreement seek to compel arbitration.  TWBTA refers the Court to MS Dealer Service Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999), a principal case espousing the estoppel theory.  In MS Dealer, the Court noted two circumstances that could give rise to equitable estoppel and thereby permit a non-signatory to compel arbitration.  First, estoppel may apply when a signatory to the written agreement "must rely on the terms of the written agreement in asserting its claims against the nonsignatory."  Id. at 947 (citations omitted).  Second, estoppel may apply when the signatory to the contract asserts claims of "substantially interdependent and concerted misconduct by both the nonsignatory

and one or more of the signatories to the contract." Id. (citations omitted).[10]

Although several courts have expanded the doctrine of equitable estoppel and have applied it in the context of jury waiver clauses,[11] there is reason to question that approach. The Court of Appeals for the Third Circuit has recognized the propriety of analogizing jury waiver clauses to arbitration clauses when deciding on an issue of non-signatory enforcement. See Tracinda II, 502 F.3d at 223 (approving application of agency theory from arbitration context). However, the Court of Appeals warned that the analogy is imperfect, because there is a presumption in favor of enforcing arbitration clauses and against enforcing jury waivers. Id. Where a principle drawn from an arbitration case may have been the result of the underlying presumption in favor of enforcing arbitration clauses, it may not

---

[10]The Court concluded that both circumstances were satisfied. The plaintiff's claims "depend[ed] entirely upon her contractual obligation." Further, her claims against the signatory and non-signatory arose out of fraud and conspiracy and were therefore "based on the same facts and [were] inherently inseparable." Id. at 948.

[11]See, e,g., Tracinda I, 2003 U.S. Dist. LEXIS at *7 ("Tracinda has alleged that all Defendants acted in concert with each other, and therefore ... Tracinda is equitably estopped from arguing that the jury waiver applies to only certain defendants." (citing MS Dealer, 177 F.3d at 947-48)); Perry v. Scruggs, 17 Fed. Appx. 81, 91 (4th Cir. 2001) (holding that "a person may not simultaneously bring a claim under a contract and repudiate a jury waiver clause in the same contract"). On appeal in Tracinda II, the Court of Appeals did not express a view on the estoppel theory. Tracinda II, 502 F.3d at 225 & n.14.

be appropriate to analogize the case to jury waivers. Id. And indeed, courts applying equitable estoppel to arbitration agreements have explicitly relied on the presumption in favor of arbitration. See MS Dealer, 177 F.3d at 947 (noting that failure to apply estoppel would thwart policy in favor of arbitration).

Nonetheless, the Court need not decide this issue here. Assuming *arguendo* that a theory of equitable estoppel applies in the context of jury waiver clauses, the Court concludes that Quinn would not be estopped from disclaiming the waiver as to TWBTA. Neither of the factors announced in MS Dealer support estoppel. Quinn need not rely, and indeed has not relied, on the terms of its written agreement with Skanska in asserting its claims against TWBTA. Quinn's negligent misrepresentation claim is based on the drawings, specifications and bulletins that TWBTA provided, and TWBTA's representations in relation thereto. Compl. ¶¶ 12-30. Quinn's claims focus on events and submissions that occurred after the subcontracts were executed, and therefore the first factor in MS Dealer is not satisfied. Moreover, Quinn has made no allegations of "substantially interdependent and concerted misconduct" by Skanska and TWBTA, and therefore the second factor does not warrant applying estoppel. MS Dealer, 177 F.3d at 947.

In view of the foregoing, the Court concludes that TWBTA, as a non-signatory to the Quinn-Skanska subcontracts, may not invoke the jury waiver clauses contained therein.

### 2.   Quinn's Reliance on Skanska's Demand

Although TWBTA may not invoke the jury waiver clauses, this does not necessarily mean that Quinn is entitled to a jury trial against TWBTA.  Quinn's own jury demand was untimely, as its demand was not filed until November 2, 2009, more than a year after the last pleading was served.[12]  Therefore, unless Quinn was entitled to rely on Skanska's jury demand in pursuing its claims against TWBTA, it has no right to a jury trial.  As noted above, a party may rely on another party's jury demand to the "extent of the issues embraced by that demand." Collins, 366 F.2d at 284. However, reliance is not appropriate where the relying party seeks a jury trial on distinct issues.  See id. at 285-86.  In Collins, reliance was appropriate where co-defendants were charged with joint liability arising from the same injury.  Id. However, the parties in the present case dispute the degree of overlap between the issues.

_____

[12]As noted above, a party may demand a jury either in a pleading, or by filing and serving the other parties with a written demand "no later than 14 days after the last pleading directed to the issue is served."  Fed. R. Civ. P. 38(b).  The last pleading that was directed to the issue of negligent misrepresentation was Quinn's amended answer on May 12, 2008.

The defendants argue that the issues in question are sufficiently distinct so as to preclude reliance.  Specifically, they argue that because Quinn has sued Skanska in contract and TWBTA in tort, there is no common legal theory.  The defendants point out that the contract and tort claims raise distinct questions, and therefore this case lacks overlapping issues and does not fall under Collins.  In contrast, Quinn argues that its contract claims against Skanska are irrelevant to the inquiry. Instead, the Court should focus on the overlap between Quinn's claim against TWBTA and Skanska's cross-claim against TWBTA. Because Quinn sued TWBTA for negligent misrepresentation, and Skanska asserted a nearly identical negligent misrepresentation cross-claim, Skanska's jury demand embraces the same issues and Collins supports reliance.

As an initial matter, the Court finds the defendants' argument to be unpersuasive.  Although it is true that Quinn sued Skanska in contract and TWBTA in tort, this fact is not relevant to the Collins inquiry.  Under Collins, the focus is on the "issues embraced by [the] demand", not the broader claims that the plaintiff asserts in its complaint against each defendant.

Moreover, the issues embraced by Skanska's demand are nearly identical to the issues raised by Quinn's negligent misrepresentation claim.  Quinn alleges that TWBTA breached the applicable standard of care by supplying drawings and

specifications that were represented as 90 or 100 percent complete, when in fact they were not. Compl. ¶¶ 12-30; 110-116. Similarly, in Count VI of its amended answer, Skanska asserts a negligent misrepresentation cross-claim against TWBTA with nearly identical allegations. Skanska argues that TWBTA breached the applicable standard of care by providing incomplete specifications and drawings, on which Skanska "and its subcontractors" relied.[13]

Given the similarity of Quinn's and Skanska's negligent misrepresentation claims, the Court concludes that Skanska's demand "as to all issues so triable" necessarily embraced the issues raised by Quinn's claims against TWBTA, as resolution of this question would involve analysis of almost identical questions. As a result, requiring Quinn to file its own jury demand would have been "superfluous." Collins, 366 F.2d at 285. The Court's holding is consistent with case law related to this issue, which has permitted reliance even in the context of issues with a lesser degree of overlap than in the present case. See, e.g., Plechner v. Avins, 569 F.2d 1250, 1256 n.3 (3d Cir. 1977) (intervenor permitted to rely on plaintiff's jury demand where

_____

[13]On its face, Skanska's claim appears to embrace Quinn's claim, alleging that the "Architect intended or knew ... that the information contained in the drawings, specifications, addenda and bulletins ... would be used and be the predicate upon which Skanska *and its subcontractors* would compute their price for performance." Def. Skanska's Am. Answer ¶ 116 (emphasis added).

intervenor's complaint "essentially the same" as plaintiff's, but contained additional request for relief); <u>Bro-Tech Corp. v. Thermax, Inc.</u>, 2009 U.S. Dist. LEXIS 23452, at *13-15 (E.D. Pa. Mar. 19, 2009) (plaintiff permitted to rely on defendant's jury demand, because theft of trade secrets and unfair competition claims had "logical relationship" and were "offshoots of the same basic controversy").[14]

Finally, the defendants advance an alternative theory. The defendants argue that if the Court finds the issues embraced by Skanska's demand to be sufficiently similar so as to permit reliance, then the estoppel theory discussed in Part I.C.1 must also apply and permit TWBTA to invoke the jury waiver clauses. In effect, the defendants argue that both the estoppel theory for non-signatory enforcement and the Collins inquiry into reliance focus on the degree of overlap between claims. Thus, if the issues are sufficiently related under Collins, then by definition they should also be similarly related under a theory of estoppel, such that Quinn cannot avoid the jury waiver clause.

The Court disagrees with this argument, because it finds the inquiries into estoppel and reliance to be distinct.

---

[14]<u>But see</u> <u>Sound Video Unlimited, Inc. v. Video Shack Inc.</u>, 700 F. Supp. 127, 144 (S.D.N.Y. 1988) (defendant not permitted to rely on plaintiff's jury demand where plaintiff's complaint asserted fraud and breach of fiduciary duty, and defendants' counterclaim asserted illegal wiretapping, because counterclaim raised new and distinct factual questions).

As noted above, estoppel may permit a non-signatory to enforce a jury waiver clause where: (1) the plaintiff must rely on the terms of a written agreement in asserting its claims against a non-signatory, or (2) where a signatory asserts claims of interdependent and concerted misconduct by both a non-signatory and a signatory.  MS Dealer, 177 F.3d at 947.  The first scenario is not present in this case.  Therefore, the Court's estoppel inquiry focuses on the nature of the claims asserted against each defendant.  Under this analysis, Quinn's contract claim against Skanska and its tort claim against TWBTA are each relevant. However, as the Court already concluded, these claims do not raise "interdependent and concerted misconduct," and estoppel would not apply to permit TWBTA to enforce the jury waivers.

In contrast, the inquiry under Collins is narrower, as the Court focuses on "the issues embraced by [the] demand." Collins, 366 F.2d at 284.  Because Quinn and Skanska have both asserted nearly identical negligent misrepresentation claims against TWBTA, Skanska's jury demand embraces the issues arising from each claim, and Collins is satisfied.  Quinn's separate contract claim against Skanska does not enter into the analysis. Therefore, it is consistent to conclude that estoppel does not apply, and yet Quinn is entitled to rely on Skanska's demand.

For the foregoing reasons, the Court holds that Quinn was entitled to rely on Skanska's jury demand in asserting its claims against TWBTA.

II.  Conclusion

For the reasons stated herein, the Court will grant Skanska's motion to strike Quinn's jury demand and will designate this action for trial by the Court.  However, the Court will deny TWBTA's motion to strike Quinn's jury demand.  The Court additionally directs the defendants to inform the Court by letter how they would like to proceed with respect to the remaining cross-claims between Skanska and TWBTA, which have not been the subject of this memorandum.

An appropriate Order shall issue separately.